JMH:BLW
F. #2021R01066

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

GERALD GORDON and ▮▮▮▮▮▮▮▮▮▮,

    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**TO BE FILED UNDER SEAL**

**AFFIDAVIT AND COMPLAINT IN SUPPORT OF AN APPLICATION FOR AN ARREST WARRANT**

Case No. 22-MJ-305

(21 U.S.C. §§ 841 and 846)

EASTERN DISTRICT OF NEW YORK, SS:

    I, RYAN LANE, being first duly sworn, hereby depose and state that I am a Detective with the New York City Police Department and a Task Force Officer with the United States Druge Enforcement Administration, duly appointed according to law and acting as such.

    In or about and between March 2021 and the present, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants GERALD GORDON ("Gordon") and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled substance, which offense involved 500 grams or more of a substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841 and 846.

    (Title 21, United States Code, Sections 841 and 846; Title 18, United States Code, Sections 2 and 3551 et seq.)

The source of your deponent's information and the grounds for his belief are as follows:

1. I am a Detective in the New York City Police Department ("NYPD") and a Task Force Officer in the Drug Enforcement Administration ("DEA"). I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file; and from reports of other law enforcement officers involved in the investigation. Where I describe the statements of others, I am doing so only in sum and substance and in part.

2. Since March 2021, the NYPD has been investigating narcotics trafficking by the defendants Gordon and ▮▮▮▮ in Staten Island, New York. Between April 2021 and March 2022, an undercover NYPD police officer (the "UC") has made 15 purchases of cocaine from Gordon and/or ▮▮▮▮, totaling over 500 grams of cocaine. For example:

    a. On or about April 28, 2021, the UC contacted ▮▮▮▮▮▮▮▮▮▮ and told ▮▮▮▮ he/she wanted to make a purchase of cocaine. Upon arriving at the agreed upon location in a vehicle at approximately 1:30 p.m., the UC called the ▮▮▮▮▮▮. ▮▮▮▮ answered and told the UC that he could not come but that he would send someone else to complete the transaction. Shortly thereafter, another individual ("Individual-1") flagged down the UC and asked him/her to pull over in a parking lot on Park Hill Avenue in Staten Island. Individual-1 then reached into the car and handed the UC a plastic twist containing approximately 10 grams of alleged cocaine. The UC then provided

Individual-1 with $470.[1]  Following the transaction, the UC called the ▬▬ and told ▬▬ that the transaction was completed.  ▬▬ responded that the UC should call him when he/she wanted more narcotics.  Law enforcement subsequently tested the material ▬▬ sold the UC and confirmed it was cocaine.

b. On or about June 9, 2021, the UC called and texted the ▬▬ and told ▬▬ he/she wanted to make a purchase of cocaine.  Upon arriving at the agreed upon location in a vehicle at approximately 2:20 p.m., the UC called the ▬▬.  ▬▬ told the UC to exit the vehicle so that an associate of ▬▬'s could identify the UC.  Shortly thereafter, an individual later identified as Gordon approached the UC and entered the UC's vehicle.  Gordon proceeded to sell the UC a plastic twist containing 19.994 grams of alleged cocaine.  The UC then provided Gordon with $940.  Law enforcement subsequently tested the material Gordon sold the UC and confirmed it was cocaine.

c. On or about July 28, 2021, the UC called and texted the ▬▬ and told ▬▬ he/she wanted to make a purchase of cocaine.  ▬▬ told the UC that Gordon would call the UC to finalize the arrangements for the sale.  Shortly thereafter, Gordon called the UC from the telephone number (929) 302-8554 (the "Gordon Phone") and and told the UC to meet at an agreed location.  At approximately 5:10 p.m., the UC drove to that location and called Gordon once

---

[1]  Each UC purchase of cocaine was transacted in United States currency.

       he/she arrived.  Gordon then approached the UC's vehicle and entered.  Gordon proceeded to sell the UC a plastic twist containing 20.041 grams of alleged cocaine.  The UC then provided Gordon with $940.  Law enforcement subsequently tested the material Gordon sold the UC and confirmed it was cocaine.

d. On or about December 14, 2021, the UC texted the Gordon Phone and told Gordon he/she wanted to make a purchase cocaine.  Gordon told the UC that he could sell the UC 100 grams of cocaine for $4,000 and the UC agreed.  Gordon to the UC to meet him at the corner of Bionia Avenue and Olympia Boulevard in Staten Island.  Gordon was already waiting at this location when the UC arrived.  Upon the UC's arrival, Gordon exited his vehicle, entered the UC's vehicle and gave the UC a large plastic bag containing a ziplock bag that contained 100.292 grams of alleged cocaine.  The UC then provided Gordon with $4,000.  Law enforcement subsequently tested the material Gordon sold the UC and confirmed it was cocaine.

e. On or about March 2, 2022, the UC texted the Gordon Phone and told Gordon he/she wanted to make a purchase cocaine.  Gordon to the UC to meet him at the corner of Bionia Avenue and Olympia Boulevard in Staten Island.  When the UC arrived at this location, he/she called Gordon and to Gordon he/she had arrived.  Gordon told the UC to come to Gordon's home instead.  Upon the UC's arrival at Gordon's home, Gordon exited the residence, entered the UC's car and gave the UC a large plastic twist that contained 49.977 grams of alleged cocaine.  The UC

4

then provided Gordon with $2,000.  Law enforcement subsequently tested the material Gordon sold the UC and confirmed it was cocaine.

3.     The other UC purchases of cocaine during the relevant period occurred in largely the same manner as the examples summarized above, involving either or both of Gordon and ▮▮▮▮ providing cocaine to the UC in exchange for U.S. currency.

4.     Based on the foregoing facts, I submit that there is probable cause to believe that GERALD GORDON and ▮▮▮▮▮▮▮▮ have violated 21 U.S.C. §§ 841 and 846.

5.     It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the Affidavit and Arrest Warrant.  I believe that sealing these documents is necessary because they are relevant to an ongoing criminal investigation, which is not public at this time.  Premature disclosure of the contents of this Affidavit and the related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

5

WHEREFORE, I respectfully request that arrest warrants for the defendants GERALD GORDON and ▮▮▮▮▮▮▮▮ be issued so that they may be dealt with according to law.

Respectfully submitted,

*Ryan Lane*
Ryan Lane
Task Force Officer
Drug Enforcement Administration

Sworn to before me by telephone on March 16 2022:

*James R. Cho*
THE HONORABLE JAMES R. CHO
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK